UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| v. | ) | No. | 21-cr-484 (RDM) |
| MICAJAH JOEL JACKSON | ) | | |
| | ) | | |
| Defendant. | ) | | |
| | ) | | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Micajah Jackson, by his attorney, Maria N. Jacob, hereby submits the following memorandum in aid of sentencing in this matter.[1]

Mr. Jackson is a twenty-six year old young man with no criminal history. Despite being so young, his life has already been riddled with tragedy and hardship. He grew up in a poor family, watched his father struggle with alcoholism, ███ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ █████████████████████████████████

Politics gave Mr. Jackson a sense of purpose after being discharged from the military and his mental health struggles have undoubtedly led to his conduct in the instant offense. For all of these reasons and the reasons discussed below, and after

---

[1] Mr. Jackson requests to reserve the right to respond to the government's sentencing position after it is filed.

1

analyzing the 3553(a) factors, a sentence of twenty four months' probation with two months of home confinement will allow for rehabilitation and continued supervision.

## BACKGROUND

On November 22, 2021, Mr. Jackson entered a guilty plea to one count of Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 USC §5104(e)(2)(G), for his participation in the events on January 6, 2021. On that day, he attended the "Save America" rally where he listened to several speeches encouraging the crowd to march to the Capitol to "stand up for this country and stand up for what is right.[2]" After the rally, Mr. Jackson, along with thousands of other individuals attending the rally, walked over to the Capitol building and entered inside. While inside, Mr. Jackson was not violent, did not destroy property, and did not enter any sensitive areas.

## ARGUMENT

### I. Legal Standard

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing. Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a). Those factors include

---

[2] *See* Matthew Choi, *Trump is on trial for inciting an insurrection. What about the 12 people who spoke before him?*, Politico (Feb. 10, 2021), available at https://www.politico.com/news/2021/02/10/trump-impeachement-stop-the-steal-speakers-467554.

(a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment.  *See* 18 U.S.C. §3553(a).

> II. **Imposing a Sentence of 24 Months' Probation With Two Months' Home Detention is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**
>
> **a. Mr. Jackson's Personal History and Characteristics**

Micajah was born in Helena, Montana where he resided until he was seven years old.  His mother became pregnant with him at the young age of sixteen after meeting his father in high school.  As such, neither parents were equipped or prepared to raise a child.  When Micajah was born, he lived with his parents at his grandparent's trailer home.  He grew up poor and only had the basic necessities.  Unfortunately, his father was an alcoholic, which led to his parents' separation when he was only five years old.  Micajah's father joined the military and he had sporadic contact with him for most of his child hood and adolescence having mostly a rocky relationship that has since turned amicable given his father's current state of sobriety.

Shortly after her separation from Micajah's father, his mother met his step-father, who lived in Ohio and was in the Navy. She became pregnant with his sister shortly thereafter and they moved to Ohio to be with him. ▮

▮ When Micajah was 13 years old, ▮ and was eventually sent to his father's ranch in Montana, away from his family in Ohio.

Micajah witnessed his father's alcoholism and suffered the consequences of his father's irritableness and frustration, which occurred often. His father supervised several employees on his ranch ▮ He was enrolled in school and excelled in basketball, however did not do well in math and science. ▮ After this incident, Micajah returned home to Ohio and did not speak to his father for five years. After his father served a year in prison for an alcohol related offense, he rehabilitated and has been sober for several years now.

4

███████████████████████████████████████

█████████████████. At the young age of sixteen, Micajah began drinking and experimenting with drugs. He finished high school and joined the US Marine Corps about a year later. He joined the Marine Corps because he wanted to change his life around as he felt he needed guidance and direction, especially because he never had an appropriate father figure in his life. Micajah graduated from boot camp ████

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

█████████████████ Shortly after, Micajah was honorably discharged from the Marine Corps. Despite ████████████████, Micajah still considers himself a Marine and feels he learned many valuable skills and core values from his experience. He tried to contribute as much as he could and earned several awards,

including the National Defense Service Medal and the Global War on Terrorism Service Medal.  *See* PSR, Par. 65.

When Micajah came home from the Marine Corps, he struggled immensely with his dependence on alcohol and his mental health.  He participated in counseling and substance abuse treatment until he gained sobriety in 2018. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Before January 6, 2021, Micajah had recently moved to Arizona and enrolled in community college where he received an Associate degree in Political Science.  He just recently began classes at Grand Canyon University in Phoenix where he hopes to obtain a Bachelor's degree in Political Science.  Micajah felt liberated being on his own in an educational environment where his talents were encouraged and where he felt supported for the first time in his life.  Micajah was always interested in politics and he feels like it is his calling to study political science and to become a professor in the future.  Micajah also found support in a religious community where his pastor describes the instant offense to be "out of character" and describes Micajah as a caring individual who does not pose a threat to the safety and well-being of others.  *See* Exhibit 1, Letter from Reverend Koepke.

6

Like many others who wished to support former President Trump, Micajah traveled to Washington, D.C. on January 6, 2021 and attended the "Save America" rally.

### b. Nature and Circumstances of the Offense

After hearing several speeches encouraging the crowd to walk down to the Capitol building, Micajah followed the crowd towards the Capitol grounds. He traveled to Washington D.C. alone and he met a group of individuals, associated with the Proud Boys. Micajah never subscribed to their ideologies and has never been a member. However, when he arrived to the Capitol building, he was overwhelmed by the presence of so many individuals and thought it would be safer to stick with a group. So, they gave him an orange armband and he walked with them. Micajah walked around the Capitol building but did not destroy any property, did not confront police officers, and left voluntarily with no incident.

When he returned home, he was interviewed by the FBI where he admitted to entering the Capitol building and was truthful with law enforcement. ███████████████████████████████████████████████████████████████ Despite the difficulty and stress this interview caused Micajah, he told the truth and admitted to his conduct.

Despite Micajah's involvement and presence on social media, he has never hid behind his conduct and has been completely apologetic regarding his role on January 6, 2021. In his letter to the court, he explains:

7

> As a Marine, I failed to uphold myself to a higher standard that I was trained to be…The mayhem that occurred outside and inside our sacred United States Capitol was uncalled for…I will humbly accept any sentencing the court decides that fits my punishment.

*See* Exhibit 3, Micajah Jackson Letter to the Court.

The government will likely place much of its emphasis on Micajah's social media presence. Micajah is passionate about politics and believes that his social media activities are part of his efforts to be a journalist, given the fact that he has press credentials. However, they are not an indication that he has not accepted responsibility as he never downplays what he did nor condones the violence that occurred. ███████████████████████████████████████████, Micajah's social awareness and social skills need improvement. That is something he now acknowledges and wishes to work on as he often does not understand the impact of his words. The fact remains that he is a peaceful person who does not advocate violence and has publicly denounced the ideologies of the Proud Boys.

### c. The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

Based on Micajah's personal history and characteristics, supervision is appropriate and the interests in rehabilitation outweigh any interest in incarceration. It is also extremely unlikely that he will recidivate given his lack of criminal history and his perfect record on pre-trial supervision for the past year. Any potential for recidivism can be addressed by conditions of probation aimed at

8

addressing his mental health needs, a more effective method of deterrence than a period of incarceration, especially for a young man such as Mr. Jackson.

Micajah's conduct on January 6, 2021 is similar in some respects to *U.S. v. Nicholas Reimler*, 1:21-CR-239 (RDM), where the Court sentenced the defendant to 36 months' probation and one month home detention.  Like Reimler, Micajah did not enter any sensitive areas, engage in destruction or confront police officers, and left on his own accord.  The biggest difference, however, is that Reimler recorded himself laughing about what was going on.  Micajah had an opposite response and was completely overwhelmed by what was occurring.  He even expresses in his letter to the Court how disrespectful he felt it was that individuals were making fun and light of what was occurring inside the building.  *See* Exhibit 3, Micajah Jackson Letter to Court.

Although there is no case identical to Micajah's case, *United States v. Jessica Bustle,* 1-21-CR-238 (TFH), is more akin to the instant offense where the Court imposed 24 months' probation with 2 months' home detention.  The defendant in that case was extremely vocal on social media about being proud of her participation on January 6, 2021.  She also observed broken windows, individuals being tear gassed, and later wrote on social media that a revolution was needed.  However, both Jessica and Micajah did not have negative confrontations with officers, enter sensitive areas, and left on their own accord.  Both also accepted responsibility early.  After the court balanced the 3553(a) factors in Ms. Bustle's case, it ultimately decided that a term of incarceration would not be productive.  *See*

9

Dkt No. 41, Transcript of proceedings. Similarly, here, a sentence of incarceration would be counterproductive as Micajah has finally made real steps to maintain independence and is engaged in active counseling ███████████████ ████████████ If he is forced to serve jail time, not only will he experience major setbacks with his mental health, but he will also lose his VA benefits if he is incarcerated more than 30 days.[3]

## CONCLUSION

For the reasons stated above, Mr. Jackson respectfully requests that the Court impose 24 months' probation with the condition that he serve the first two months on home detention and complete 100 hours of community service. Mr. Jackson also requests that a fine not be imposed in light of his obligation to pay $500 restitution.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Maria N. Jacob

---

[3] Micajah's proposed recommendation is also consistent with *U.S. v. Tanner Sells*, 1:21-CR-549 (ABJ) (defendant sentenced to 24 months' probation with 90 days home detention); *U.S. v. Felipe Marquez*, 1:21-CR-136 (RC) (defendant sentenced to 18 months' probation with 90 days home detention after court considered how his mental health played a large role in his involvement in the offense); and *U.S. v. Jack Griffith*, 1:21-CR-204 (BAH) (defendant sentenced to 36 months' probation and 90 days home detention. Defendant also vocal on social media post January 6, 2021).

                Assistant Federal Public Defender
                625 Indiana Ave. NW, Ste. 550
                Washington, D.C. 20004
                (202) 208-7500
                Maria_jacob@fd.org