IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 1:21-CR-484 (RDM) |
| MICAJAH JOEL JACKSON | ) | |
| | ) | |

**DEFENDANT, MICAJAH JACKSON'S, REPLY TO GOVERNMENT'S SENTENCING MEMORANDUM**

Micajah Jackson, through undersigned counsel, submits this reply to the government's sentencing memorandum filed on February 20, 2022 in further support of a sentence of probation with two months' home confinement as a condition of supervision.

I. **Micajah's Conduct On January 6, 2021 Does Not Warrant a Sentence of Incarceration**

The government asserts in its sentencing memorandum that Micajah's conduct on January 6, 2021 warrants a sentence of 60 days' incarceration followed by a period of probation. *See* Gov't Sent. Memo, ECF No. 25. However, its argument in support is based on exaggeration and not reality. The government first proposes that Mr. Jackson's conduct was aggravating because he brought a backpack that contained medical supplies. *Id.* at 2. However, this simple fact alone does not show that he was aware of potential violence. Micajah traveled across the country to attend a rally with thousands of people who had the intention of protesting the election. It is not uncommon for individuals to travel with a first aid kit, especially

1

amongst such a large crowd. The fact that Micajah brought a first aid kit and not weapons is actually a mitigating factor and shows his intentions for peace not violence. It is also notable that it is Micajah himself who told the FBI that he was carrying this backpack, further showing his cooperation and honesty with law enforcement.

Next, the government places emphasis on Micajah shouting "Oathbreakers!" while walking on the Capitol grounds. *Id.* However, Micajah is notably not confronting officers while shouting this phrase. He kept his distance, was not aggressive, and did not advance towards officers.[1] This distinguishes him from defendants who confronted officers and shouted while advancing closely towards them, many of which still received sentences of probation with home confinement.[2]

The government then tries to underscore the fact that Micajah was peaceful while in the Capitol building, arguing that "if he had committed acts of violence or engaged in property damage or destruction, he would have been charged with felony offenses." *See* Gov't Sent. Memo at 2. However, the government forgets its prior charging decisions as there are misdemeanor cases that have involved defendants displaying assaultive and aggressive behavior.[3] So, it does matter for purposes of an

---

[1] The New York Times, *Day of Rage: How Trump Supporters Took the U.S. Capitol* at 11:47.
[2] *See United States v. Jacob Wiedrich*, 21-CR-581 (TFH) (two months' home detention imposed as defendant was young, did well on pre-trial supervision, and had no criminal history); *United States v. Jordan Stotts*, 21-CR-272 (TJK) (court imposed two months' home detention despite Stotts shouting at police and scaling wall to gain access to Capitol).
[3] *See United States v. Bradley Rukstales*, 21-CR-041 (CJN) (defendant sentenced to 30 days' incarceration after government alleged he threw a chair in the direction of police officers who had been forced to retreat and was ultimately dragged out of building after resisting their efforts).

appropriate sentence in this case whether Micajah also displayed such behavior. When removing the exaggeration from the government's sentencing memorandum, below is the conduct of Micajah Jackson on January 6, 2021:

- Travels to Washington, D.C. alone with no prior coordination or planning carrying a backpack of medical supplies
- Attends rally and walks to Capitol building
- Randomly meets members of Proud Boys and walks alongside them at certain points in time
- Before entering Capitol building, shouts "Oathbreakers!" while keeping large distance from officers
- Enters Senate Wing Door at 2:22 PM
- Seen in Capitol Crypt at 2:25 PM
- Enters Small House Rotunda at 2:33 PM
- Walks towards door of House Chamber at 2:43 PM
- Walks north through Statuary Hall at 2:46 PM after chemical irritant deployed
- Enters Great Rotunda at 2:49 PM
- Exits building at 2:51 PM voluntarily through East Rotunda Door

These are not the actions of an individual who "celebrated and encouraged violence" as the government wrongfully claims. *See* Gov't Sent. Memo at 2. These

are also not the actions of defendants who have received 60 day jail sentences in this jurisdiction.[4]

## II.   Micajah's Conduct After January 6, 2021 Also Does Not Warrant a 60 Day Jail Sentence

The government then largely hangs its hat on why Micajah should go to jail on his post January 6 media presence. *Id.* at 14-17.  However unsavory his social media posts and interviews with the media have appeared to many, in no way does Micajah ever condone or celebrate the violence that occurred at the Capitol building on January 6, 2021.  His views are political and religious in nature and not once does he express that he was proud of his participation on January 6 or that the violence that occurred was somehow justified.

Micajah acknowledges that many of his posts do accuse the government of wrongdoing, such as corruption and overcharging of these cases.  Whatever opinions he has on the subject does not suggest that he is not sorry for his personal role on January 6, 2021.  Regardless of his beliefs as to mostly who was responsible for the violence, he has never condoned it.  He also regrets his presence and participation

---

[4] The government compares this case to *U.S. v. Jennifer Ryan*, 21-CR-50 (CRC), a case where the defendant not only talked about fighting on the way to the Capitol building but told the media that January 6 was the most proud day of her life.  This case is not a fair comparison and does not share any similar characteristics other than they both had a media presence of some sort after January 6, 2021.  The government also provides *U.S. v. Mark Leffingwell*, 21-CR-5 (ABJ), a defendant who assaulted two officers and received 27 months' incarceration to show that a sentence of 60 days in jail in this case would not be a disparate sentence.  The only shared characteristic between the *Leffingwell* case and the instant matter is both defendants are disabled veterans.  As such, this is not a comparable case and should not be used to provide justification for a 60 day sentence in this case. Lastly, the government provides *U.S. v. Boyd Camper*, 21-CR-325 (CKK) in support of a 60 day sentence in this case.  Not only did Camper proclaim he was an "insurrectionist," but he also destroyed evidence post January 6, 2021.

on January 6, 2021. Micajah admits that some of his post January 6 media posts were not wise and misinformed. He is not claiming to have always said the right things and that is unfortunately the problem with social media is that one's words, no matter how rashly said, are forever memorialized for all to see. If he had the chance to do it over again, he would have refrained from making many public comments.

Lastly, Micajah has been nothing but cooperative and compliant with his pre-trial release conditions and did not give inaccurate information to United States Probation. The government alleges that Micajah did not inform his pre-trial officer about traveling on September 16, 2021. *Id*. at 17. However, Micajah did inform his officer and undersigned counsel about this travel notifying her that he would be traveling to Montana. Micajah drove there and stopped in Colorado along the way. Micajah has not only informed his pre-trial officer of all of his whereabouts and travel, he has gone above and beyond to also call undersigned counsel to advise of his whereabouts to ensure he is in compliance with his conditions of release. He has attended all appointments, tested negative for illicit substances, and has incurred no new charges. *See also* ECF No. 29, Probation Recommendation (noting he has been compliant with pre-trial supervision).

Micajah also did not intentionally give inaccurate information to United States Probation in the preparation of their pre-sentence report. Some of these discrepancies have since been resolved as noted in the final pre-sentence report filed on February 25, 2022. One thing that is clear is that Micajah has been brutally

5

honest to the world as his public accounts are not hidden and so he would have no motive to hide them from United States Probation. It is also notable that Micajah offered his most active account, @thejfkreport, which is the subject of most of the government's memorandum regarding his social media activity.

### III. A Sentence of Probation and Incarceration For a Petty Offense is Not Permitted

In its sentencing memorandum submitted to the Court, without any prior notice to the defendant in his plea agreement, the government now claims that Mr. Jackson can be sentenced to a period of incarceration followed by a period of probation. *See* Gov't Sent. Memo at 33. Contrary to the government's assertion, the Court is not authorized to impose both a sentence of incarceration and a sentence of probation in this case, and doing so would raise significant constitutional concerns. 18 U.S.C. § 3551; *see United States v. Torrens*, No. 21-cr-204 (BAH), ECF No. 110 & 125 (Chief Judge Howell chose to not impose such a sentence after briefing provided to the Court). The plea agreement nowhere indicates or notifies Mr. Jackson that he may be subject to both 6 months of incarceration and 5 years of probation. A correct reading of the relevant statutes and the legislative history, as discussed in the defense pleadings in *Torrens*, make it clear that a district court has a dichotomous choice: it can either sentence the defendant to imprisonment up to six months, or it can sentence the defendant to probation for up to five years. Where, as here, there is solely one single petty offense, the statute precludes a combined probationary and a sentence of incarceration.

The only case the government cites that is applicable, *United States v. Posley*, 351 F. App'x 801, 809 (4th Cir. 2009) (unpublished), misreads 18 U.S.C. § 3563(a)(3) and ignores 18 U.S.C. § 3551(b).[5]  The sole court in this district to impose both incarceration and supervision for a petty misdemeanor, in *United States v. Virginia Spencer*, No. 21-cr-00147-2 (CKK), reconsidered its sentence and imposed an incarceration only sentence after briefing was provided to the Court.

The Office of the Federal Public Defender recently filed an Amicus brief in *U.S. v. Caplinger*, 21-CR-(PLF) that addresses these arguments in further detail as well as explaining why the rest of the cases the government cited in this case and *Caplinger* are not applicable to the instant issue.  *See* ECF No. 53 attached as Exhibit 1.  Mr. Jackson adopts the same arguments made in *Caplinger* and requests that the Court reject the government's proposition that a petty offense can include a sentence of incarceration followed by a period of supervision.

Lastly, the government asserts that, at a minimum, the Court can impose intermittent confinement as a condition of probation. *See* Gov't Sent. Memo at 40-42.  However, that is still considered a Bureau of Prisons sentence and is not permissible for the same reasons as discussed above.  The Court does not have

---

[5] It appears that the decision has not been cited by any court, according to a Lexis citing history search. Its analysis, issued on the papers without the benefit of oral argument, id. at 809, is inaccurate and not remotely persuasive for the reasons set forth in the pleadings in *Torrens*.

7

statutory authority to impose any sentence of imprisonment and probation for a petty offense regardless of what the incarceration is called. *See* Exhibit 1 at n.11.

For a petty offense, it is unclear at what point an "interval of time" effectively becomes a "term of imprisonment" and therefore would constitute an unauthorized sentence of both imprisonment and probation. Cf. 18 U.S.C. §3583(d) (term of intermittent confinement pursuant to §3563(b)(10) may be imposed only for a *violation* of condition of supervised release). A sentence of "intermittent confinement" as a condition of probation for a petty offense raises significant issues and potential constitutional issues. *See United States v. Voda*, 994 F.2d 149, 151 n.2 (5th Cir. 1993) ("Voda expressly waived any argument that imposition of sixty days' confinement served over sixty day period is "imprisonment," as opposed to intermittent confinement, and thus a violation of section 3562"); *United States v. Baca*, 2011 WL 1045104 (C.D. Cal. March 18, 2011) supra at *2 (45 day condition of confinement violates statute).

## CONCLUSION

For the reasons discussed above, Mr. Jackson requests that the Court reject the government's recommendation and impose a sentence of probation with the condition that he serve the first two months on home confinement.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

8

/s/
Maria N. Jacob
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

9